## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

<table>
<tr><td>

James Bordonaro,

                          Plaintiff,

             -v-

FCI Lender Services, Inc. and AMIP Management,

                       Defendants.

</td><td>

2:22-cv-2545
(NJC) (JMW)

</td></tr>
</table>

### MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff James Bordonaro ("Bordonaro") commenced this action, proceeding pro se, on May 4, 2022 and filed an Amended Complaint on October 7, 2024. (Compl., ECF No. 1; Am. Compl., ECF No. 45.) He brings two claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA") against Defendants FCI Lender Services, Inc. ("FCI") and American Mortgage Investment Partners ("AMIP" and collectively, "Defendants") in their capacity as mortgage servicers and "Debt Collectors" as defined by the FDCPA: (1) a claim for validation of debts in violation of 15 U.S.C. § 1692g ("Section 1692g"); and (2) a claim for false or misleading representations in connection with the collection of a debt in violation of 15 U.S.C. § 1692e ("Section 1692e"). (Am. Compl.) This action was originally assigned to Judge Joan M. Azrack but was reassigned to my docket on October 10, 2023. (Elec. Order, Oct. 10, 2023.)

Before me is Defendants' Motion to Dismiss the Amended Complaint pursuant to Rules 12(b)(1), (b)(2), (b)(5), and (b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). ("Mot.", ECF No. 53.) On June 11, 2025, Magistrate Judge James M. Wicks issued a Report and Recommendation (the "R&R") recommending that the Motion to Dismiss be granted and that the

Amended Complaint be dismissed with prejudice because: (1) the two claims set forth in the Amended Complaint are subject to dismissal under res judicata; (2) the Court lacks personal jurisdiction over AMIP; and (3) the Amended Complaint fails to state a Section 1692g(a) claim. (R&R, ECF No. 66.) Judge Wicks also recommended that Bordonaro be denied leave to amend because further amendment would be futile in light of the recommendation that res judicata barred both claims. (*Id.*)

Defendants served the R&R on Bordonaro by first class mail on June 12, 2025. (ECF No. 67.) The R&R instructed that any objections to the R&R must be submitted to the Clerk of Court within fourteen (14) days, i.e., by June 26, 2025. (R&R at 38.) On June 27, 2025, at 12:13 AM, Bordonaro filed objections to the R&R thirteen minutes past the deadline set by Judge Wicks. (Pl.'s Objs., ECF No. 68.) On July 1, 2025, Defendants moved to strike Bordonaro's objections as untimely (ECF No. 69), which Bordonaro opposed (ECF No. 70). Finally, on July 10, 2025, Defendants filed a memorandum of law in response to Bordonaro's objections. (Defs.' Mem L. Resp. to Pl.'s Objs. ("Defs.' R&R Resp."), ECF No. 71.)

The facts and procedural history are set forth in more detail in the thorough and well-reasoned R&R. (*See* R&R at 2–10.) Having reviewed de novo the motion papers, the applicable law, the R&R, and Bordonaro's untimely objections to the R&R, I adopt the R&R (ECF No. 66) in part. Specifically, I adopt the R&R's recommendations on the following five issues: (1) the Court possesses subject matter jurisdiction because Bordonaro's claims are not barred by the *Rooker-Feldman* doctrine; (2) the Court lacks personal jurisdiction over AMIP because Bordonaro has failed to properly serve AMIP; (3) Bordonaro's Section 1692g claims are barred by res judicata; (4) the Amended Complaint states a plausible Section 1692e claim with respect to alleged conduct by AMIP in making contradictory statements regarding which entity was

2

servicing the loan but not with respect to alleged conduct by AMIP in failing to notify Bordonaro of the servicing of his mortgage or by FCI and AMIP in offering fraudulent testimony in the foreclosure action; and (5) Bordonaro is denied leave to amend his Amended Complaint with respect to his Section 1692g claims and with respect to the portions of his Section 1692e claims for which he fails to state a claim. I depart from the remaining recommendations set forth in the R&R and conclude that the Section 1692e claims are not barred by res judicata and grant Bordonaro an extension of time to serve a summons and his Amended Complaint on AMIP. Furthermore, I do not reach the question of whether the Amended Complaint states a Section 1692g claim because that claim is barred by res judicata, but note that the R&R's recommendation that the Amended Complaint fails to state a Section 1692g claim incorrectly considered an extrinsic document that was not attached to, incorporated by reference in, or integral to the Amended Complaint.

Accordingly, Defendants' Motion to Dismiss (ECF No. 53) is granted in part and denied in part as set forth below. The Amended Complaint is dismissed with prejudice as to the Section 1692g claims against FCI and AMIP for validation of debts, the Section 1692e claim against AMIP for failure to notify Bordonaro of the servicing of his mortgage, and the Section 1692e claims against FCI and AMIP for offering allegedly fraudulent testimony in the foreclosure action. Because the Amended Complaint plausibly alleges a Section 1692e claim against AMIP for its allegedly contradictory statements regarding which entity was servicing the loan, and because this claim is not barred by res judicata, Bordonaro shall serve a summons and the Amended Complaint on AMIP by **October 20, 2025** or this sole remaining claim will be dismissed without prejudice.

## LEGAL STANDARDS

### I.  Report and Recommendations

In reviewing a report and recommendation concerning a motion to dismiss, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and may "accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997); *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).[1] However, district courts frequently hold that where an "issue is dispositive, the [c]ourt need not reach . . . other objections to the R&R." *Styleline Studios Int'l Ltd. v. Litvack*, No. 24-cv-1192, 2025 WL 2092288, at *7 (E.D.N.Y. July 25, 2025). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. 28 U.S.C. § 636(b)(1)(C); *see also Larocco v. Jackson*, No. 10-cv-1651, 2010 WL 5068006, at *2 (E.D.N.Y. Dec. 6, 2010).

### II.  Motion to Dismiss

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining whether a claim is sufficiently plausible to withstand dismissal under Rule 12(b)(6), a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, footnotes, and alterations.

allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Central Sch. Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

## DISCUSSION

### I.    Timeliness of Bordonaro's Objections

As an initial matter, I consider whether to review Bordonaro's objections to the R&R. Defendants move to strike Bordonaro's objections (ECF No. 69), arguing that the "Objection [was] late and as such, was waived." (Defs.' R&R Resp at 8.)[2] Bordonaro admits that his objection was untimely but argues that I should consider it for three reasons: (1) it was filed only thirteen minutes late; (2) Defendants were not prejudiced by the delay; and (3) Bordonaro is pro se and had been staying at an Airbnb where he lacked stable internet access and therefore depended upon a friend to assist with filing. (ECF No. 70.) Although the R&R warned Bordonaro that failure to file timely objections would "preclude further review" by the District Court (R&R at 38), I will consider Bordonaro's objections because he is pro se and his late filing

---

[2] Excerpts from the parties' submissions and the Amended Complaint are reproduced here exactly as they appear in the original documents. Errors in spelling, punctuation, or grammar will not be corrected or noted.

did not prejudice Defendants, who filed a response on July 10, 2025. *See, e.g.*, *Kumar v. United States*, No. 22-cv-5533, 2025 WL 1194376, at *1 (S.D.N.Y. Apr. 22, 2025) (accepting a pro se plaintiff's untimely objection).

## II.    Jurisdiction

### A.    Subject Matter Jurisdiction and the *Rooker-Feldman* Doctrine

Bordonaro objects to what he describes as "the Magistrate Judge's conclusion . . . that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine." (Pl.'s Objs. at 3 (emphasis added).) However, Bordonaro's objection misunderstands the R&R's findings. The R&R does *not* recommend that the Court find that it lacks subject matter jurisdiction. Rather, the R&R recommends that "Plaintiff's Complaint should *not* be dismissed for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine" because "*Rooker-Feldman*'s fourth factor – that the state-court judgment was rendered before the district court proceedings commenced – is not met." (R&R at 22, 25 (emphasis added).) It is undisputed that this federal action began on May 4, 2022 and that the state court granted final Judgment of Foreclosure of Sale more than one and a half years later on December 12, 2023. (Compl.; Foreclosure J., ECF No. 53-11.) Defendants do not contest the R&R's finding that the *Rooker-Feldman* doctrine does not apply because this action began before issuance of the state court judgment in the foreclosure action. Thus, I adopt the R&R's recommendation that the court possesses subject matter jurisdiction, though my analysis with respect to res judicata calls into question the R&R's finding that Bordonaro's Section 1692e claims seek review of the state court judgment.

### B.    Personal Jurisdiction over AMIP

Next, Bordonaro objects to "the portion of the [R&R] that recommends Dismissal of the Amended Complaint against Defendant [AMIP] for Lack of Personal Jurisdiction on the basis of

alleged Defective service." (Pl.'s Objs at 6.) He makes two arguments. First, Bordonaro states

that he "filed a Certificate of Service with this Court (ECF No. 45), clearly listing AMIP

Management, LLC as a served party" and it is "well-settled that a properly filed certificate of

service constitutes prima facie evidence of valid service." (*Id.*) Second, Bordonaro argues that

"[e]ven if there were a technical deficiency in Plaintiff's service . . . courts may excuse such

defects where the defendant received actual notice and has not been prejudiced." (*Id.* at 7.)

Neither argument is persuasive.

"[T]o survive a motion to dismiss based on lack of personal jurisdiction and insufficient

service of process" pursuant to Rule 12(b)(5), Fed. R. Civ. P., "the plaintiff must demonstrate

that she adequately served the defendants." *Buon v. Spindler*, 65 F.4th 64, 73 (2d Cir. 2023).

Rule 4 of the Federal Rules of Civil Procedure "governs the content, issuance and service of a

summons." *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 332 (E.D.N.Y. 2021). It provides,

in relevant part, "Unless service is waived, proof of service must be made to the court. Except for

service by a United States marshal or deputy marshal, proof must be by the server's affidavit."

Fed. R. Civ. P. 4(l)(1); *see also Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d

54, 57 (2d Cir. 2002) (submission of a sworn affidavit of service establishes a presumption of

proper service).

Rule 4(m), Fed. R. Civ. P., governs the timing of service and requires that "[i]f a

defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the

action without prejudice against that defendant or order that service be made within a specified

time." "[I]t is well settled that district courts have discretion to grant extensions under Rule 4(m)

even in the absence of good cause." *Buon*, 65 F.4th at 75. Courts often consider four factors

when evaluating whether to extend time to serve under Rule 4(m): "whether (1) the applicable

statute of limitations would bar the plaintiff's re-filed claim, (2) the defendant had actual notice of the claim, (3) the defendant attempted to conceal the defect in service, and (4) the defendant would suffer prejudice as the result of an extension." *LaNasa v. Stiene*, 731 F. Supp. 3d 403, 415 (E.D.N.Y. 2024), *aff'd*, No. 24-1325, 2025 WL 893456 (2d Cir. Mar. 24, 2025).

With respect to Bordonaro's first argument, I adopt the R&R's finding that Bordonaro's certificate of service was insufficient to establish proof of service on AMIP. As the R&R found, the certificate of service only states that the Complaint "*will be* served upon" AMIP—not that Bordonaro ever actually served AMIP—and Bordonaro never subsequently filed any affidavit of service. (R&R at 26 n.13 (emphasis added) (quoting ECF No. 45 at 10).) Additionally, the deficient certificate of service was not signed under penalty of perjury. *See* ECF No. 45 at 10; *Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-cv-3372, 2020 WL 3002362, at *3 (E.D.N.Y. Feb. 20, 2020), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020) (holding that an unsworn certificate of service was inadequate to prove service under Rule 4(l)(1), Fed. R. Civ. P.).

Bordonaro's argument that he is relieved from his obligation to serve AMIP because AMIP had actual notice of this action is unpersuasive. Although the Second Circuit has recognized that Rule 4 is to be "liberally construed . . . in cases in which the party has received actual notice[,] . . . there must be compliance with the terms of [Rule 4]." *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972); *see also Buon*, 65 F.4th at 73–76. The "right remedy" for a defect in service "is typically to direct the plaintiff to re-serve the pleading," and not to waive the defect. *Byrd v. Town of DeWitt*, 698 F. Supp. 3d 379, 387 (N.D.N.Y. 2023); *see also Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 217 (S.D.N.Y. 2021) ("Service generally will be quashed and the action preserved in those situations in which there is a reasonable prospect that the

plaintiff ultimately will be able to serve the defendant properly." (quoting 5B Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1354)).[3] Nonetheless, Bordonaro is correct that AMIP had actual notice of this action and that an extension of time to serve would not prejudice AMIP. *See LaNasa*, 731 F. Supp. at 403 (weighing these factors when extending time to serve). I also find significant that Bordonaro is pro se, and that the statute of limitations would bar his Section 1692e claim against AMIP if he were required to refile because that claim is based on an alleged statement made by AMIP on October 24, 2023, and the FDCPA requires a plaintiff to file suit "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *Benzemann v. Citibank N.A.*, 806 F.3d 98, 100 (2d Cir. 2015); Am. Compl. ¶ 21.

Accordingly, since I find below that the Amended Complaint plausibly alleges a Section 1692e claim against AMIP for its alleged contradictory statements regarding which entity was serving the loan, and because this claim is not barred by res judicata, I grant Bordonaro a final extension of time to serve AMIP with the summons and Amended Complaint. **Bordonaro must serve AMIP with a summons and the Amended Complaint by October 20, 2025 and file proof of service on the docket.**

---

[3] In arguing that the Court should excuse the defect in service, Bordonaro quotes *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246 (S.D.N.Y. 2003), for the proposition that "[w]here a defendant has actual notice, failure to strictly comply with Rule 4 is not always fatal." (Pl.'s Objs. at 7 (quoting *Mende*, 269 F. Supp. 2d at 251).) Neither this quote nor the argument Bordonaro makes appears in *Mende*. *See* 269 F. Supp. 2d at 251. Instead, the court there held that the plaintiff had not properly served the defendants, and that it would not use its discretion to extend time for service because the plaintiff could not satisfy other requirements for personal jurisdiction, which rendered any proper service futile. *Id.* at 242.

III.    **Failure to State a Claim**

A.    Res Judicata

Bordonaro objects to the R&R's recommendation that his FDCPA claims are barred by res judicata because they arise from the same transaction that was litigated in his prior state court foreclosure action. (Pl.'s Objs. at 7–9.) "A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014). "In assessing the preclusive effect of a prior state-court judgment, [federal courts] apply the preclusion law of the state that issued the judgment." *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machines Corp.*, 110 F.4th 106, 114 (2d Cir. 2024). Under New York law, res judicata or claim preclusion, bars successive litigation of all claims where: (1) the previous action involved a judgment "on the merits" by a "court of competent jurisdiction"; (2) the previous action involved the "same parties" or those in privity with them; and (3) the claims asserted in the subsequent action were "actually litigated . . . [or] could have been raised in the prior litigation." *Id.*; *Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 96 N.E.3d 737, 744 (N.Y. 2018).

As set forth in the R&R, "New York courts use a 'transactional [] approach' to determine whether a claim 'could have been raised in the prior litigation.'" *Beijing Neu Cloud*, 110 F.4th at 114 (quoting *In re Hunter*, 827 N.E.2d 269, 274 (N.Y. 2005)); *see also* R&R at 27. Under this approach, "any subsequent claim that arises out of the same transaction or series of transactions as the adjudicated claim is barred, even if based upon different theories or if seeking a different remedy." *Beijing Neu Cloud*, 110 F.4th at 114. In determining whether two claims arise within the same transaction, courts consider "whether the facts are related in time, space, origin, or

10

motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.*[4]

Bordonaro does not dispute that the prior adjudication at issue here—the New York state foreclosure action commenced against him on December 30, 2011—resulted in a final adjudication on the merits when the state court issued a judgment of foreclosure and sale against him on December 12, 2023. (Foreclosure J.)[5] He also does not challenge that the Defendants here—FCI and AMIP—were in privity with Wilmington Savings Fund Society, FSB ("Wilmington"), the plaintiff that brought the foreclosure action against him. (*See* Short Form Order ("Order Granting Foreclosure J."), ECF No. 53-10.)[6] Instead, Bordonaro argues that his

---

[4] Some judges in this District have noted that New York "has a permissive counterclaim rule" and therefore concluded that "res judicata generally will not necessarily bar claims that could have been counterclaims in a prior action." *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, 147 (E.D.N.Y. 2016) (citing *Beckford v. Citibank N.A.*, No. 00-cv-205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000)); *see also Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Prot. Dutch Church*, 502 N.E.2d 978, 981 n.2 (N.Y. 1986). However, the Second Circuit has interpreted New York's res judicata law more broadly to "apply to *all claims* that *could* have been raised in a prior proceeding" and district courts are "bound by the circuit court's interpretation of state law." *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-cv-4871, 2020 WL 1151313, at *11 (S.D.N.Y. Mar. 9, 2020) (emphasis added) (citing *Maharaj v. Bank Am. Corp.*, 128 F.3d 94, 97 (2d Cir. 1997)).

[5] I take judicial notice of the events that transpired in Bordonaro's state foreclosure action because the filings and orders in that action are public records. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) ("[R]elevant matters of public record" are susceptible to judicial notice); *Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (holding that a state court decision is a "public record[], and thus appropriate for judicial notice" on a Rule 12(b)(6) motion).

[6] The R&R defined the second prong of the res judicata standard to require only that the prior action involved the "*plaintiffs* or those in privity with them," rather than that it involved the same *parties* or those in privity with them. (R&R at 27 (emphasis added) (quoting *Mendez v. Pretium Mortg. Credit Partners I, Loan Acquisition, LP*, No. 21-cv-826, 2023 WL 8283148 (E.D.N.Y. Nov. 30, 2023), *aff'd sub nom. Mendez v. Pretium Mortg. Credit Partners*, No. 23-8057-CV, 2024 WL 4691006 (2d Cir. Nov. 6, 2024)).) As a result, the R&R did not consider whether

FDCPA claims are not part of the same transaction or series of transactions as his foreclosure action because they "arise from independent violations of Federal Law that could not have been raised or adjudicated in the Foreclosure action." (Pl.'s Objs at 8.) Bordonaro does not clearly explain why his claims could not have been raised in the foreclosure action, but his chief objection appears to be that his claims stem from events that occurred after the state court foreclosure action was commenced against him on December 30, 2011. (*Id.* at 8–9.) In support, Bordonaro relies on the Second Circuit's decision in *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), to which he erroneously attributes the following sentence: "Res Judicata does not bar claims that arise subsequent to the commencement of prior litigation." (Pl.'s Objs. at 8 (misquoting *Burgos*, 14 F.3d at 790).) In fact, this sentence does not appear in *Burgos*. However, both the Second Circuit and at least one New York state court have adopted a similar principle that "[c]laims arising subsequent to a prior action, based on conduct occurring *after the commencement* of the earlier suit . . . need not, and often perhaps could not, have been brought in that prior action, and so are not barred by res judicata." *TechnoMarine SA*, 758 F.3d at 500 (emphasis added); *see also UBS Sec. LLC v. Highland Cap. Mgmt., L.P.*, 159 A.D.3d 512, 513 (N.Y. App. Div. 2018) (quoting *TechnoMarine* and holding that "[b]ecause the conduct at issue here took place after the commencement of the prior action, there is no res judicata").

---

Defendants FCI and AMIP were in privity with Wilmington, the plaintiff in the state court foreclosure action. Nevertheless, the second requirement for res judicata is met with respect to FCI and AMIP because the Amended Complaint alleges that FCI and AMIP were servicers for Wilmington and under New York law, "the party servicing the mortgage and the party that later acquires it . . . are considered to be in privity with the party to the original action concerning the mortgage for the purposes of res judicata." *Fequiere v. Tribeca Lending*, No. 14-cv-812, 2016 WL 1057000, at *7 (E.D.N.Y. Mar. 11, 2016); Am. Compl. ¶¶ 9, 21; *id.* at 26.

Nevertheless, Bordonaro's objection oversimplifies the legal standards that govern this Court's res judicata analysis. Although claims arising after the commencement of an action may not generally be barred by res judicata, claim preclusion will nonetheless apply "where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim." *TechnoMarine*, 758 F.3d at 501. Moreover, in cases involving prior foreclosure actions, "[c]ourts in this Circuit have found that a plaintiff's federal-court claim is precluded by a state-court judgment in a foreclosure action when the plaintiff has alleged, in federal court, that the defendants acted improperly in connection with the *making, validity or enforcement* of the underlying mortgage." *George v. Nationstar Mortg., LLC*, No. 16-cv-261, 2017 WL 3316065, at *7 (E.D.N.Y. Aug. 2, 2017) (emphasis added). Accordingly, claims "questioning the validity of [a] plaintiff's right to seek foreclosure are sufficiently connected to the foreclosure action" to be barred by res judicata, although "[c]laims relating to a broad range of conduct . . . rather than narrowly bearing on the mortgage note itself or its enforcement, do not pass the transaction test." *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 257 (D. Conn. 2017) (interpreting comparable requirements in Connecticut res judicata law).

The district court in *Tanasi* reached the same conclusion interpreting Connecticut res judicata law, which, like New York's res judicata law, hinges on whether the subsequent claim arises from the same transaction as the adjudicated claim. *See* 257 F. Supp. at 259–60. The district court held that claims stemming from a defendant-mortgage servicer's failure to respond to loss mitigation and mortgage modification applications (i.e., the alleged "negligent processing" of loss mitigation and mortgage modification applications) was precluded by res judicata even though the challenged conduct occurred while foreclosure proceedings were ongoing because the claims "reasonably relate to the execution of the note and mortgage, and the

subsequent default." *Id.* at 260. By contrast, a host of claims against the defendant-mortgage servicer were not precluded because they did not "narrowly bear on the mortgage note itself or its enforcement." *Id*. These included claims that the defendant-mortgage servicer negligently failed to provide a single point of contact, solicited "mortgage modification applications that it never intended to consider" in an attempt to secure higher interest rates by postponing default, failed to respond to "qualified written requests" in violation of RESPA, misled consumers about loss mitigation policies, solicited mortgage modification applications and demanded large amounts of sensitive personal information only to deny the applications without review, misled consumers concerning the availability of loss mitigation policies, and requested duplicative, unnecessary updates to documentation during the application process. *Id*. at 260–61.

Here, Bordonaro's Section 1692g claims directly implicate the validity of the debt that was the subject of the foreclosure judgment and are therefore barred by res judicata. The Amended Complaint indicates that the first cause of action is brought under Section 1692g(a), which requires a "debt collector" to provide certain information within five days of sending an "initial communication" to a consumer if that communication does not include the statutorily required information. 15 U.S.C. § 1692g(a); Am. Compl. ¶ 22. However, the Amended Complaint pleads facts pertaining to Section 1692g(b), which requires a debt collector to send a "verification" of a debt when the consumer timely disputes the debt. 15 U.S.C. § 1692g(b); Am. Compl. ¶¶ 15–18, 22. I therefore construe the Amended Complaint to allege a violation of Section 1692g(b).[7]

---

[7] The R&R assumed that the Amended Complaint alleged a Section 1692g(a) claim but analyzed the claim as a violation of Section 1692g(a) and (b). (R&R at 31–32.)

In support of the Section 1692g claims, the Amended Complaint alleges that Bordonaro sent "Notice[s] of Dispute" to Defendants on May 13, 2021 and July 17, 2023 but that Defendants failed to validate the alleged debt owed under the note agreement as required by the FDCPA's procedures. (Am. Compl. ¶¶ 15–21.) The foreclosure action also lasted for more than a decade, and in those proceedings Bordonaro challenged "the validity of the debt in the foreclosure, numerous times, even if he did not specifically raise the FDCPA." Defs.' R&R Resp. at 10; Order Granting Foreclosure J.; *see also Giraldo*, 694 F.3d at 164 (holding that the court may take judicial notice of public records, including court records). Section 1692g(b) provides procedures by which a debt collector must "cease collection of [a] debt" until it is validated and the debt collector sends a validation letter. 15 U.S.C. § 1692g(b). By "issuing a Judgment of Foreclosure and Sale, the state court has already determined that the debt is valid." (R&R at 22.) Thus, even though the Section 1692g claims are pled as procedural violations of the FDCPA's disclosure requirements, they boil down to the claim that Defendants acted "improperly in connection with the . . . *validity* . . . of the underlying mortgage." *George*, 2017 WL 3316065, at *7; *see also Tanasi*, 257 F. Supp. 3d at 257. The Section 1692g claims therefore "arise[] out of the same transaction or series of transactions as the adjudicated claim" and are barred by res judicata, even though they are based on a different theory and seek a different remedy. *Beijing Neu Cloud*, 110 F.4th at 114.[8]

---

[8] In *George*, another judge of this Court concluded that a Section 1692g claim was not barred by res judicata because the allegations did "not actually stem from the execution of the note or Mortgage" but instead concerned "conduct leading up to and during the foreclosure action" unrelated to "Defendants' conduct in executing or servicing the mortgage." 2017 WL 3316065, at *7. The facts lead to a different conclusion here, where the Section 1692g claim is an attempt to relitigate the validity of the debt that was the subject of the state court foreclosure action under a different cause of action.

By contrast, although it presents a close question, the Section 1692e claims relate to conduct that is beyond the scope of enforcement of the mortgage and thereby do not pass the res judicata transaction test. On the one hand, Bordonaro is correct that the Section 1692e claims stem from conduct that primarily occurred after the foreclosure action was commenced on December 30, 2011, since the three acts alleged in the Amended Complaint in support of the claims are that: (1) AMIP failed "to mail and notify [Bordonaro] of the servicing of his mortgage"; (2) AMIP made contradictory statements on May 11, 2021 and October 24, 2023 regarding which entity was servicing Bordonaro's loan; and (3) Defendants made false and misleading testimony in the foreclosure action. (Am. Compl. ¶¶ 19, 21, 23–24.) Bordonaro also raised a similar issue in the foreclosure action by arguing that it was unclear whether FCI or AIMP was the mortgage servicer. (*See* ECF No. 53-16; *cf.* R&R at 10 (noting that the "state court largely side-stepped [this] question[]").) However, as Defendants argue in their Response, the events also "took place prior to the December 12, 2023 judgment of foreclosure and sale." (Defs.' R&R Resp. at 10.) As the R&R found on the merits, the allegation that a servicer made contradictory statements regarding which entity was servicing a loan impacts a plaintiff's "way of knowing to whom they should pay the debt." (R&R at 35 (citing *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 95 (2d Cir. 2012)).) Awarding damages for such a violation, does not implicate the validity of the mortgage or whether the plaintiff in fact defaulted. Such a claim is akin to the claim in *Tanasi* challenging a mortgage servicer's negligent failure to provide a single point of contact to the plaintiff. *See* 257 F. Supp. 3d at 260. Likewise, Bordonaro's Section 1692e claims for fraudulent testimony pertain solely to Defendants' actions during the state court action rather than to the validity or enforcement of the mortgage. *See Gabriele*, 503 F. App'x at 92–93 (claims for "litigation misconduct" in a state foreclosure action

16

were not barred by res judicata); *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 690 (S.D.N.Y. 2019) (finding that res judicata did not bar claims that the defendants filed "false and deceptive documents in court" because the evidence required to prove these claims was "almost entirely different" from the evidence needed to challenge the collection of a debt); *Tanasi*, 257 F. Supp. 3d at 257–258 (discussing approvingly a Connecticut state court decision finding that claims concerning a party's negligent behavior at a foreclosure mediation did not "reasonably relate" to the "subject matter of the underlying" foreclosure).

In recommending that all the claims in the Amended Complaint are barred by res judicata, the R&R relies on *Mendez v. Pretium Mortgage Credit Partners I, Loan Acquisition, LP*, in which a judge of this Court found that several claims were barred by res judicata, including the claim that defendants "misled the [f]oreclosure [c]ourt." No. 21-cv-826, 2023 WL 8283148, at *5–6 (E.D.N.Y. Nov. 30, 2023), *aff'd sub nom. Mendez v. Pretium Mortg. Credit Partners*, No. 23-8057-cv, 2024 WL 4691006 (2d Cir. Nov. 6, 2024). The court reasoned that a finding for the plaintiff on "any of her claims would require this Court to overrule the state's determination" in the foreclosure action. *Id. Mendez* is distinguishable however, because the requested relief was that the court "nullify the [underlying] loan due to fraud and invalidity" and the plaintiff did not seek damages. *Id.* at *5, 6 n.3. The reasoning of *Mendez* applies to the Section 1692g claims here, which attack the validity of the mortgage, but it does not apply to the Section 1692e claims, which target conduct *outside* the validity and enforcement of the mortgage note.

Finally, Bordonaro relies on several inapposite cases in support of his argument that none of his FDCPA claims could have been raised in his foreclosure action: *Sykes v. Mel S. Harris & Assocs., LLC*, 780 F.3d 70, 91 (2d Cir. 2015), *Piper v. Meade & Assocs., Inc.*, 282 F. Supp. 3d

17

905, 918 (D. Minn. 2017), and *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373,

386 (1985). (Pl.'s Objs. at 8–9.) Bordonaro again misrepresents the findings and language of

these decisions, and I find none of them persuasive. (*See id*.) Both *Sykes* and *Piper* involved

FDCPA claims, but neither addressed whether res judicata barred the FDCPA claims nor did

either case even involve a state court foreclosure action. *See Sykes*, 780 F.3d at 94 n.5

("Defendants have not asserted a res judicata defense in their answers"), *Piper*, 282 F. Supp. 3d

at 918 (considering whether plaintiffs had standing to bring an FDCPA claim and whether the

claims were plausible). As a result, neither decision has any bearing on the question of what

claims Bordonaro could have brought in the state foreclosure action against him. Likewise,

although Bordonaro cites *Marrese* for the proposition that "[f]ederal Courts must assess Res

Judicata in a manner consistent with the full enforcement of federal statutory schemes," (Pl.'s

Objs. at 9), this principle does not appear in *Marrese*, and the Supreme Court instead held that

that the lower court "should have first referred to [state] law to determine the preclusive effect of

[a] state judgment." 470 U.S. at 386.

Accordingly, Bordonaro's Section 1692g claims are barred by res judicata and dismissed

with prejudice because, for the reasons addressed below, Bordonaro fails to show that he could

amend the Amended Complaint to cure this problem. *See infra* Discussion § III.D. The Rule

12(b)(6) motion to dismiss the Amended Complaint's first cause of action is therefore granted on

this basis. By contrast, Bordonaro's Section 1692e claims are not barred by res judicata.

> B.  Section 1692g Claims

The dismissal of the Section 1692g claims set forth in the Amended Complaint on the

basis of res judicata is dispositive of those claims. The Section 1692g claims may not proceed,

so I "need not reach . . . other objections to the R&R" on those claims. *Styleline Studios*, 2025

WL 2092288, at *7. Nonetheless, I address the R&R's recommendation that, as an alternative to dismissal on res judicata grounds, this Court dismiss the Section 1692g claims for failure to state a claim, only to note that the R&R incorrectly considered an extrinsic document that was not attached to, incorporated by reference in, or integral to the Amended Complaint.

Some recitation of the alleged facts is helpful. Relevant here, the Amended Complaint alleges that: (1) FCI sent Bordonaro a notification of the debt on May 5, 2021 (Am. Comp. ¶ 15); (2) Bordonaro "dispatched a 'Notice of Dispute' within 30 days of receipt" of the notification (*id.* ¶ 16); and (3) FCI "responded to the 'Notice of Dispute'" by sending Bordonaro a letter dated May 21, 2021 (*id.* ¶ 17), which is attached to the Amended Complaint as Exhibit E (*id.*, Ex. E). The R&R's analysis hinges on a letter dated June 3, 2021 ("the June 3, 2021 Letter"), which Defendants submitted with their brief in support of the Motion to Dismiss and incorrectly identified as the May 21, 2021 Letter. (*See* June 3, 2021 Letter, ECF No. 53-19; Mem. L. Supp. Mot. Dismiss ("Mem.") at 19–20, ECF No. 53-23.) However, unlike the May 21, 2021 Letter, the June 3, 2021 Letter is not mentioned or referenced in the Amended Complaint in any way. Therefore, it may be considered in resolving a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) only if it is "integral to the complaint." *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023).

For a document to be considered integral to the complaint, it is a "necessary prerequisite . . . that the plaintiff rely on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006); *see also Clark*, 89 F.4th at 93 n.18. This rule is animated by the principle that "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity

of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Accordingly, courts in this Circuit have repeatedly held that for a document to be integral, not only must the complaint "rely heavily upon [the document's] terms and effects" but the "plaintiff must have actual notice of all the information in the documents." *Pincover v. J.P. Morgan Chase Bank, N.A.*, 592 F. Supp. 3d 212, 221 (S.D.N.Y. 2022); *see, e.g.*, *Somerset v. Stephen Einstein & Assocs., P.C.*, 351 F. Supp. 3d 201, 209 (E.D.N.Y. 2019). Moreover, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and it must be clear that "there exist[s] no material disputed issues of fact regarding the relevance of the document." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

> In most instances where [the integral to the complaint] exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint.

*Id.*[9]

Applying these principles here, the June 3, 2021 Letter is not integral to the complaint. The R&R's analysis of the Section 1692g claims rests on the mailing of this letter. (R&R at 32.)

---

[9] The Second Circuit has, for example, recognized the applicability of the exception to "emails that were part of a negotiation" that served as the basis of a good faith and fair dealing claim, to "contracts referenced in [a] complaint," and to "documents filed with the Securities and Exchange commission" in securities fraud cases. *Foreman*, 19 F.4th at 107–08. By contrast, the Second Circuit has held that an audit report that demonstrated the knowledge of some of the alleged violations in the action was not integral to the complaint because the report "was not alluded to" in the complaint and, although the plaintiff received the report prior to filing the complaint, the plaintiff "did not rely on the report to support, or form the basis for, the allegations in the Complaint." *Id.* at 108.

Nevertheless, Bordonaro did not "rel[y] heavily on [the letter's] terms and effect in pleading his claims" because the Amended Complaint does not refer to or even "allude[] to" the letter in any way and none of its contents appear within the Amended Complaint. *Foreman*, 19 F.4th at 107. Moreover, contrary to the R&R's findings, the Amended Complaint does not "admit[] that Defendants" sent Bordonaro a "debt validation letter dated June 6, 2021." (R&R at 31 (citing page five of the Amended Complaint)). Rather, page five of the Amended Complaint, on which the R&R relies, admits that Bordonaro received the May 21, 2021 Letter—not the June 3, 2021 Letter. (*See* Am. Compl. at 5.) In fact, although Defendants submit a declaration attesting that the June 3, 2021 Letter was mailed to Bordonaro, (TR Hansen Decl. ¶ 5, ECF No. 53-18), it is not even clear whether Bordonaro had "actual notice" of the letter's existence such that he could have relied upon it when drafting the Amended Complaint. Bordonaro denies that he received the June 3, 2021 Letter, (*see* Pl.'s Resp. to Hansen Decl., ECF No. 64-2), and the Amended Complaint pleads that FCI "failed to validate the alleged debt," Am. Comp. ¶ 18; *see, e.g.*, *Somerset*, 351 F.Supp. 3d at 209 (finding that "it cannot be said that the Plaintiff had actual notice [of a letter at issue in an FDCPA claim], let alone [that the plaintiff] relied on [it] in framing the Amended Complaint," because "Defendants provide no indication that the Plaintiff in fact received the . . . letter beyond [Defendants'] assertion that they mailed it").[10] Therefore, evidence that the June 3, 2021 Letter exists and was mailed pursuant to FCI's routine business practices is a matter for summary judgment and not Defendants' 12(b)(6) Motion to Dismiss the Amended Complaint.

---

[10] Like the June 3, 2021 Letter, the Hansen declaration is extraneous to the Amended Complaint and Defendants do not even attempt to demonstrate how the Court can consider its contents for purposes of his 12(b)(6) Motion.

Because the R&R's analysis of the Section 1692g claims hinged on the June 3, 2021 Letter, I do not adopt the R&R's alternative recommendation that the Amended Complaint fails to state a Section 1692g claim.

### C.  Section 1692e Claims

The R&R recommends that, in the event that this Court does not adopt the recommendation that the Section 1692e claims be dismissed on res judicata grounds, the Court find that the Amended Complaint states a plausible Section 1692e claim for AMIP's alleged contradictory statements regarding which entity was servicing the loan. (R&R at 35–36.) By contrast, the R&R finds that the Amended Complaint does not plausibly allege a claim that AMIP failed to mail and notify Bordonaro of the servicing of his mortgage because the Amended Complaint "admit[s] that AMIP notified [Bordonaro] that they were servicing his mortgage." (R&R at 34 (citing Am. Compl.); *see also* Am. Compl. ¶ 19; *id.* at 26.) Likewise, the R&R finds that the Amended Complaint "has failed to identify any relevant facts to support the contention that there was fraudulent testimony proffered in the foreclosure action." (R&R at 34.) Bordonaro does not object to these recommendations. (Pl.'s Objs. at 12–16.) Because this portion of the R&R is not the subject of an objection, I need only review it for clear error.

Having conducted a de novo review of the R&R's findings with respect to the plausibility of the Section 1692e claims, I adopt the R&R's thorough and considered recommendations that the Amended Complaint fails to plead plausible Section 1692e claims against FCI and AMIP with respect to any alleged failure to mail and notify Bordonaro of the servicing of his mortgage and any alleged fraudulent testimony proffered in the foreclosure action because such claims are contradicted by the record and are otherwise based on conclusory allegations. (*See* R&R at 33–34 (citing Am. Compl.).) I also adopt the R&R's recommendation that the Amended Complaint

states a plausible Section 1692e claim only with respect to AMIP's alleged contradictory statements regarding which entity was servicing the loan. (*See* R&R at 35.) However, because AMIP has not been properly served, Bordonaro must serve the summons and Amended Complaint on AMIP as set forth above.

     D.  <u>Leave to Amend</u>

Finally, Bordonaro objects to the R&R's recommendation that the Court deny him leave to amend because he argues that the "Second Circuit has repeatedly held that Leave to Amend should be 'freely given when justice so requires'" and should also be "liberally granted to *pro se* litigants." (Pl.'s Objs. at 16–19 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) and *Grullon v. City of New Haven,* 720 F.3d 133, 140 (2d Cir. 2013).)

Rule 15(a)(1) permits "a plaintiff [to] freely amend her pleadings . . . as of right without court permission" twenty-one days after a complaint is served or twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f), Fed. R. Civ. P. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). After the time to amend as of right has passed—"either upon expiration of a specified period of time in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)"—a plaintiff seeking to amend a complaint must either request leave from the court or obtain the opposing party's written consent. *Id.* at 115; *see also* Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) sets forth a lenient standard under which "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2)*.* "Unless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Forman*, 371 U.S. at 182; *Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.*, No. 17-cv-02987, 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018). "A plaintiff need not be given leave to amend if it fails to specify . . . how amendment

would cure the pleading deficiencies in its complaint." *TechnoMarine SA*, 758 F.3d at 505 (finding that granting leave to amend would be futile because the plaintiff failed to show how amendment would address the pleading inadequacies); *see also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53–54 (2d Cir. 1999).

Rule 15(a)(2)'s period of "liberal" amendment ends upon expiration of the date set by the court as the deadline after which no amendment will be permitted, at which point the plaintiff must also satisfy the "good cause" requirement of Rule 16, Fed. R. Civ. P. *Sacerdote*, 9 F.4th at 115. After that date expires, Rule 16 also applies, and a court must balance the "liberal" amendment standard of Rule 15 with Rule 16(b)(4)'s requirement that the plaintiff show "good cause" for an extension of the deadline to amend. *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009); *see also Pasternack v. Shrader*, 863 F.3d 162, 174 n.10 (2d Cir. 2017) (plaintiff must satisfy both Rules 15 and 16 to be permitted to amend after the deadline in the scheduling order has passed). The purpose of Rule 16(b)(4) is to "offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker v. Columbia Pictures, Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000).

Here, Bordonaro amended the original Complaint once as a matter of right. (Am. Compl.; Min Entry, July 19, 2024; Elec. Order, Jul. 11, 2024.) Rule 15(a)(2) governs the standard applied to determine whether Bordonaro should be granted leave to amend any dismissed claims because no deadline has been set for final amendment of the pleadings. (Min Entry, Jul. 19, 2024; Dec. 2, 2024.)[11]

---

[11] In a telephone conference on July 19, 2024, I warned Bordonaro that there would be "no further opportunity to amend" after he filed his Amended Complaint. (*See* Min. Entry, July 19, 2024.) However, that minute entry did not set a deadline for final amendment of the pleadings

Leave to amend is properly denied for certain of Bordonaro's claims under Rule 15(a)(2) as follows. First, because Bordonaro's Section 1692g claims are barred by res judicata, those claims are "barred" and there is nothing Bordonaro can do to overcome res judicata by amending his claims. (R&R at 37.) Amendment of the Section 1692g claims is therefore futile, and leave to amend is properly denied under Rule 15(a)(2). *See Forman*, 371 U.S. at 182; *Adlife Mktg.*, 2018 WL 4568801, at *1.

Second, Bordonaro's Section 1692e claims against AMIP for alleged failure to notify Bordonaro of the servicing of his mortgage and against FCI and AMIP for fraudulent testimony in the foreclosure action are dismissed because the first set of claims are contradicted by the record and the second is based on threadbare and conclusory allegations. (*See* R&R at 34 (noting that the failure to notify claim against AMIP is contradicted by the Amended Complaint, and that the claims against FCI and AMIP concerning fraudulent testimony in the foreclosure action are entirely conclusory and unsupported by any factual allegations).) Bordonaro fails to object to these findings or provide any explanation for how he would cure the identified deficiencies in these claims with the filing of a second amended complaint. At best, he generically objects that he could "[a]ttach letters showing Defendants' inconsistent and misleading statements," but it is not clear that this objection even relates to his Section 1692e claims for failure to notify him of the servicing of the mortgage or for fraudulent testimony in the foreclosure action as opposed to

---

because it was not the type of "scheduling order setting deadlines for subsequent proceedings in the case, including joinder of parties and amendments to the pleadings" that is governed by Rule 16(b). *Parker*, 204 F.3d at 339. Moreover, Rule 16(b)'s purpose to "offer a measure of certainty in pretrial proceedings" and to ensure the pleadings at some time become "fixed" so as to avoid prejudice is not implicated here because discovery has not yet commenced and remains stayed until resolution of the motion to dismiss currently at issue. *Parker*, 204 F.3d at 240; Min. Entry, Jul. 9, 2024.

his Section 1692g claims, which also involve allegations of inconsistent and misleading statements. (*See* Pl.'s Objs. at 18.) Even if it did, however, any amendment of Bordonaro's Section 1692e claim against AMIP for failure to notify him of servicing of the mortgage is futile because Bordonaro admits in his Amended Complaint that he received a notice that AMIP was servicing the mortgage. (*See* Am. Compl. ¶ 19; *id.* at 26.) Likewise, Bordonaro has not demonstrated that he could cure his Section 1692e claims against FCI and AMIP for fraudulent testimony because the sole allegation in the Amended Complaint in support of those claims is that "the 'Notice of Servicing Transfer' was false and misleading in addition to *testimony provided in the foreclosure action*." (Am. Compl. ¶ 24 (emphasis added).) Under these circumstances, opportunity to amend these specific Section 1692e claims is rightfully denied under Rule 15(a)(2). *TechnoMarine SA*, 758 F.3d at 505; *Hayden*, 180 F.3d at 53.

By contrast, Bordonaro's Section 1692e claim against AMIP for its allegedly contradictory statements regarding which entity was servicing his loan would proceed if this Court had personal jurisdiction over AMIP. Accordingly, that claim will survive if Bordonaro properly serves AMIP.

Accordingly, I deny Bordonaro leave to amend his Section 1692g claims against FCI and AMIP, his Section 1692e claim against AMIP for alleged failure to notify Bordonaro of the servicing of his mortgage, and his Section 1692e claims against FCI and AMIP for offering allegedly fraudulent testimony in the foreclosure action because any such amendment of these claims would be futile. Bordonaro may proceed on his Section 1692e claim for AMIP's allegedly contradictory statements regarding which entity was servicing his loan if he properly serves AMIP with the summons and Amended Complaint **by October 20, 2025 and files proof of service on the docket.**

26

**CONCLUSION**

Having reviewed de novo the motion papers, the applicable law, the R&R, and Bordonaro's objections to the R&R, Defendants' Motion to Dismiss (ECF No. 53) is granted in part and denied in part for the reasons set forth above. The Amended Complaint is dismissed with prejudice as to the Section 1692g claims against FCI and AMIP, the Section 1692e claim against AMIP for failure to notify Bordonaro of the servicing of his mortgage, and the Section 1692e claims against FCI and AMIP for offering allegedly fraudulent testimony in the foreclosure action. The Amended Complaint plausibly alleges a Section 1692e claim against AMIP for making allegedly contradictory statements regarding which entity was servicing the loan. Bordonaro shall serve AMIP with a summons and the Amended Complaint by **October 20, 2025,** or the sole remaining claim in this action will be dismissed without prejudice.


Dated:  Central Islip, New York
        September 28, 2025


                                _/s/ Nusrat J. Choudhury____
                                NUSRAT J. CHOUDHURY
                                United States District Judge